Opinion
 

 SPARKS, J.
 

 In this proceeding the plaintiffs, led by the International Association of Plumbing and Mechanical Officials (IAPMO), contend that the State Building Standards Law (Health & Saf. Code, § 18901 et seq.) precludes the defendant California Building Standards Commission (Commission) from adopting the 1994 version of the Uniform Mechanical Code published by the real party in interest International Conference of Building Officials (ICBO), as the basis for the 1994 version of the part of the California Building Standards Code known as the California Mechanical Code. (Cal. Code Regs., tit. 24, pt. 4.)
 
 [1]
 
 IAPMO contends that the Commission is required to adopt the 1991 Uniform Mechanical Code which was jointly published by IAPMO and ICBO. As we shall explain, acceptance of IAPMO’s position would be inconsistent with the statutory scheme and would effectively give IAPMO, a private organization, veto power over the state regulatory process and would thus constitute an unlawful delegation of
 
 *248
 
 legislative authority. Accordingly, we shall affirm the decision of the trial court to deny the petition for a writ of mandate.
 

 Background
 

 There is no question that regulation of the building industry is an appropriate subject for the exercise of the state’s police power. (See
 
 Agnew
 
 v.
 
 City of Culver City
 
 (1956) 147 Cal.App.2d 144, 153 [304 P.2d 788].) In California that regulation is accomplished, in part, through the California Building Standards Code adopted pursuant to the State Building Standards Law. (Health & Saf. Code, § 18901 et seq. [unless otherwise indicated, further undesignated statutory references are to the Health and Safety Code].) A building standard is, in essence, a rule, regulation, order, or other requirement which regulates, requires, or forbids the method of use, properties, performance, or types of materials used in the construction, alteration, improvement, repair or rehabilitation of buildings, structures, or other improvements to real property. (§ 18909, subd. (a).) The California Building Standards Code is applicable on a statewide basis, although local jurisdictions may adopt more restrictive standards where warranted. (§§ 18938, subd. (b), 18938.5, 18941.5.)
 

 The California Building Standards Code is contained in title 24 of the California Code of Regulations. Title 24 is divided into parts and includes, but is not limited to, such things as the California Building Code (pt. 2), the California Electrical Code (pt. 3), the California Mechanical Code (pt. 4), the California Plumbing Code (pt. 5), and the California Energy Code (pt. 6).
 

 The adoption of the California Building Standards Code is a multiagency task presided over by the Commission. (§§ 18906, 18907.) Where a state agency is vested with authority to adopt building standards, the agency must do so in compliance with the procedures of the Administrative Procedure Act (APA) contained in the Government Code. (§ 18930, subd. (a); Gov. Code, § 11346 et seq.) After an agency adopts a building standard, the standard is submitted to the Commission for review in accordance with certain statutory criteria. (§ 18930.) The Commission may approve the standard, return the standard to the adopting agency with recommendations for amendment, or reject the standard. (§ 18931.) In certain instances the Commission is itself charged with the duty, or vested with the authority, to adopt, amend, or repeal building standards. (§§ 18928, subd. (c), 18933, 18934.5,18934.6, 18934.7.) In those instances the Commission must comply with APA.
 
 (Ibid.)
 

 In addition to the adoption or approval of building standards, the Commission is charged with overseeing the development of a centralized code of
 
 *249
 
 state building standards. The Commission is required to create and administer an annual adoption cycle through which building standards may be continuously updated and revised. (§ 18929.1.) It is required to adopt a code format which is, to the extent feasible, consistent with applicable model codes. (§§ 18930, subd. (a)(8), 18931, subds. (c) & (d), 18932, subd. (c).) And the Commission maintains a coordinating council to assist agencies in the building standard adoption process. (§ 18926.)
 

 Building standards that are adopted or approved by the Commission are filed with the Secretary of State and published in the California Building Standards Code and become effective 180 days after publication. (§ 18938, subds. (b) & (c).) All building standards adopted by the Commission or adopted by state agencies with approval of the Commission are collected and published in a centralized manner in the California Building Standards Code. (§§ 18910, 18938.) The code is accompanied by adoption tables that show users which agencies have adopted a particular standard or an amended version thereof. (§ 18932.)
 

 As might be expected, the building standards field is not static. Such things as new or amended state or federal laws as well as technological inventions and discoveries make the subject dynamic. As a result, there is constant consideration of revisions to the various components of the California Building Standards Code. This is accomplished in part by the requirement that the Commission coordinate an annual code adoption cycle among the various state agencies that have the authority to adopt building standards. (§ 18929.1.) In addition, the California Building Standards Code is revised and republished in its entirety every three years, with annual supplements published in other years. (§ 18942, subd. (a).)
 

 The process of adopting building standards into a centralized code is facilitated by the use of model codes. Model codes are drafted and published by private organizations such as ICBO and IAPMO. (§ 18916.) Model codes are typically subject to the copyright of the private organizations that draft and publish them and the state cannot reproduce the text of the model codes without reaching an agreement with the copyright holders. Consequently, unless the Commission and an organization that publishes a model code first enter into a written agreement concerning publication, a state building standard can adopt a provision of a model code only by reference, with appropriate additions or deletions. (§ 18928.1.) As a result, a person planning a project must have access to the applicable model code or codes as well as the California Building Standards Code in order to determine the standards that apply to the project. By reference to the adoption tables of the
 
 *250
 
 California Building Standards Code the user can determine whether a particular model standard has been adopted by an agency or agencies with jurisdiction over a project, and the appropriate part of the California Building Standards Code will provide additions or deletions to the model standard that have been made by an adopting agency.
 

 Numerous provisions in the State Building Standards Law refer to and endorse the model code approach to the California Building Standards Code, although none expressly mandates the adoption of a model code. Section 18916 defines “model code” to include, but not be limited to, certain specifically named model codes. Section 18928, subdivision (a), provides: “Each state agency adopting a model code, national standard, or specification shall reference the most recent edition of applicable model codes, national standards, or specifications.” Subdivision (b) of that section provides, in relevant part: “Each state agency adopting a model code, national standard, or specification shall adopt the most recent editions of the model codes, as amended by the adopting agency, within one year after the date of publication of the model codes, national standards, or specifications.” Subdivision (c) of that section provides: “If the adopting agencies fail to comply with subdivision (b), the commission shall convene a committee to recommend to the commission the adoption, amendment, or repeal, on the agencies’ behalf, of the most recent editions of the model codes, national standards, or specifications and necessary state standards.”
 

 As we have noted previously, in order to avoid infringement of copyright, a building standard approved by the Commission may adopt the text of a model code only by reference, with appropriate additions or deletions. (§ 18928.1.) In this respect section 18928.1 provides, in relevant part: “The commission may elect to adopt or approve standards which incorporate, in whole or in part, the text of these publications, with changes therein, or deletions therefrom, directly incorporated into the text of the California Building Standards Code, but no textual material contained in any of the model codes, as enumerated in Section 18916, may be included in the California Building Standards Code by means other than incorporation by reference, [unless a publication agreement is first reached].”
 

 This brings us to section 18938, which forms the crux of this case. Subdivision (a) of section 18938 gives the Commission the exclusive authority to approve building standards and file them with the Secretary of State for publication in the California Building Standards Code. Subdivision (c) of that section establishes, with certain exceptions, a general effective date of 180 days after publication of an adoption, amendment, or repeal of a
 
 *251
 
 building standard. Subdivision (b) of section 18938, the pivotal provision under review, provides: “The building standards contained in the Uniform Fire Code of the International Conference of Building Officials and the Western Fire Chiefs Association, Inc., the Uniform Building Code of the International Conference of Building Officials, Appendix Chapter 1 of the Uniform Code for Building Conservation of the International Conference of Building Officials, the Uniform Plumbing Code of the International Association of Plumbing and Mechanical Officials, the National Electrical Code of the National Fire Protection Association, and the Uniform Mechanical Code of the International Conference of Building Officials and the International Association of Plumbing and Mechanical Officials, as referenced in the California Building Standards Code, shall apply to all occupancies throughout the state and shall become effective 180 days after publication in the California Building Standards Code by the California Building Standards Commission or at a later date after publication established by the commission.”
 

 IAPMO contends that by implication section 18938, subdivision (b), requires the Commission and various state agencies to adopt the listed model codes, including the “Uniform Mechanical Code of the International Conference of Building Officials and the International Association of Plumbing and Mechanical Officials.” Until the 1994 code adoption cycle for the triennial publication of the California Building Standards Code, this was not a problem. A brief explanation will illustrate the manner in which the issue has now arisen.
 

 ICBO and IAPMO are organizations with long-standing interests in model codes for the building industry. ICBO has developed, revised and published a Uniform Building Code since 1927. IAPMO published a Standard Plumbing Code in 1932, and since 1945 has developed, revised and published a Uniform Plumbing Code. These model codes serve as the basis for the California Building Code and the California Plumbing Code, respectively, and there is no issue presented here with respect to those publications.
 

 Mechanical codes are concerned with the installation and maintenance of heating, ventilating, cooling, and refrigeration systems. Many years ago various aspects of mechanical systems were included in the Uniform Building Code of ICBO and later IAPMO produced a Uniform Heating and Comfort Cooling Code to address such matters. As mechanical systems became more common and complicated, ICBO and IAPMO devoted more of their work to them. Eventually ICBO and IAPMO got together to produce a Uniform Mechanical Code, with the first edition being published in 1967.
 
 *252
 
 Since then, ICBO and IAPMO have jointly developed and revised the Uniform Mechanical Code, jointly own the copyright on the work, and jointly published it until 1994. The Uniform Mechanical Code has long served as the basis for the California Mechanical Code portion of the California Building Standards Code. The Uniform Mechanical Code, like other model codes, was revised and republished in a manner consistent with the triennial publication pattern of the California Building Standards Code.
 

 The 1991 version of the Uniform Mechanical Code was the last jointly published version of that work. The agreement between ICBO and IAPMO pursuant to which that work was published expired after 1993. In late 1993 IAPMO notified ICBO of the termination of the agreement and since that time the parties have been unable to come to another agreement. In 1994, ICBO published a Uniform Mechanical Code based upon an update and revision of the Uniform Mechanical Code that had been jointly developed. IAPMO produced and published a new Uniform Mechanical Code and urged the Commission to adopt its Uniform Mechanical Code as the basis for the California Mechanical Code.
 

 Following administrative proceedings, the Commission determined to adopt the 1994 version of the Uniform Mechanical Code published by ICBO as the model code basis for the California Mechanical Code. IAPMO commenced this proceeding by filing a petition for a. writ , of mandate in the trial court. In its petition IAPMO alleged that the Commission failed to comply with requisite administrative procedures for adoption of a model code. That question was resolved adversely to IAPMO by the trial court and IAPMO does not press the claim on appeal. IAPMO also contended, and continues to contend, that pursuant to section 18938, subdivision (b), the Commission was required to adopt the Uniform Mechanical Code of ICBO and IAPMO as the basis for the California Mechanical Code. Since there was no jointly published Uniform Mechanical Code in 1994, IAPMO contends that for the 1994 adoption cycle for the triennial publication of the California Building Standards Code, the Commission was required to adopt the 1991 Uniform Mechanical Code, since that was the most recent Uniform Mechanical Code jointly published by ICBO and IAPMO.
 

 The trial court rejected IAPMO’s claim for two reasons. First, the court found nothing in section 18938, subdivision (b), that expressly or impliedly required the designation of a particular model code. The court concluded that the statute was intended to provide for statewide application and an effective date 180 days after publication to the extent the enumerated codes were adopted, but not to compel their adoption. The court found nothing in the
 
 *253
 
 remainder of the State Building Standards Law to imply a requirement that a particular code be adopted, and found that the statutory scheme in fact implies the opposite. Second, the court noted that the 1994 Uniform Mechanical Code published by ICBO was jointly developed by ICBO and IAPMO and the copyright was jointly owned. The court concluded that although IAPMO had withdrawn from joint publication of the Uniform Mechanical Code beginning with the 1994 version, the Commission could nevertheless conclude that the ICBO publication was the Uniform Mechanical Code of ICBO and IAPMO. This appeal by IAPMO followed.
 

 Discussion
 

 After this somewhat lengthy iteration of the factual and legal background of this dispute, our discussion of the issue presented will be brief. In the State Building Standards Law the Legislature clearly recognized the utility and endorsed the practice of using model codes as the basis for regulation, but did so without expressly requiring the adoption of particular model codes. The Legislature also clearly viewed the matter of building standards as a dynamic process and took care to eliminate the risk of regulatory stasis by providing for such things as annual regulatory revision of building standards, publication of annual supplements to the California Building Standards Code, triennial republication of the entire California Building Standards Code, and, where model codes are used, consideration for adoption of any revision of the model code within one year of publication of the revision.
 

 In order to achieve its purposes, the Legislature chose to walk a tight line between lawful and unlawful delegation of regulatory authority. To put it simply, the Legislature could not lawfully grant the power to make laws to a private entity such as IAPMO. For example, in
 
 Columbia Specialty Co.
 
 v.
 
 Breman
 
 (1949) 90 Cal.App.2d 372 [202 P.2d 1034], it was asserted that the defendant had violated the Uniform Plumbing Code. The Court of Appeal said, at page 378: “Manifestly, any association may adopt a ‘code’ but the only code that constitutes the law is a code adopted by the people through the medium of their legislatures. The Plumbing Officials Association is purely private and in no sense represents the people.” In
 
 Agnew
 
 v.
 
 City of Culver City, supra,
 
 147 Cal.App.2d at pages 154 through 157, the court held that ordinances that required electrical equipment to carry a certain private laboratory approval label and to be installed in accordance with the privately formulated National Electrical Code were void. The court considered decisional authorities from other states and concluded that “[ordinance provisions similar to those challenged are universally condemned.” (See also
 
 *254
 

 Brock
 
 v.
 
 Superior Court
 
 (1937) 9 Cal.2d 291, 297 [71 P.2d 209, 114 A.L.R. 127];
 
 Bayside Timber Co.
 
 v.
 
 Board of Supervisors
 
 (1971) 20 Cal.App.3d 1, 10-12 [97 Cal.Rptr. 431].) Thus, while the Legislature can provide for and encourage the participation of private associations in the regulatory process, it must stop short of giving such groups the power to initiate or enact rules that acquire the force of law.
 
 (King
 
 v.
 
 Meese
 
 (1987) 43 Cal.3d 1217, 1234 [240 Cal.Rptr. 829, 743 P.2d 889].) And this rule applies equally to any legislation that would abrogate the state’s police power by giving a private party or parties a veto over the regulatory function. (See
 
 Bayside Timber Co.
 
 v.
 
 Board of Supervisors, supra,
 
 20 Cal.App.3d at p. 10;
 
 Taylor
 
 v.
 
 Board of Education
 
 (1939) 31 Cal.App.2d 734, 746 [89 P.2d 148].)
 

 In providing for state building standards the Legislature could have adopted a particular model code, either directly or by depriving the Commission of any discretion by specifically compelling it to adopt the model code. However, such an act could adopt only an existing version of the model code and could not take into account future revisions without improperly delegating lawmaking authority to the private entity that produced the code. Such a scheme would defeat the Legislature’s purposes by nullifying the delegation of authority to an administrative body with expertise on the subject matter and by building in a measure of regulatory stasis since it would take an act of the Legislature to revise or repeal the existing code. Instead, the Legislature chose to grant discretion to the Commission and to permit and encourage, but without requiring, the Commission to use model codes with continuous reconsideration and revision of building standards that have the force of law in light of nonbinding revisions of those model codes.
 

 In light of this background, the construction urged by IAPMO is neither compelled nor implied by the language of the statute. By its terms, subdivision (b) of section 18938 applies only to standards in the specified codes which are “referenced in the California Building Standards Code, . . .” Thus, the Commission argues that “if the ICBO/IAPMO Uniform Mechanical Code is not referenced in the California Standards Code, section 18938(b) does not apply at all. If it is referenced, section 18938(b) requires only that the building standards in that version of the Uniform Mechanical Code apply throughout the state and that they become effective 180 days after publication of the Code.”
 

 ICBO echoes this reading. In its view, the statute requires the building standards to meet two criteria in order to “apply” and “become effective” in California. First, the standard must be “contained in” the listed model codes.
 
 *255
 
 Second, they must be “referenced in” in California Building Standards Code. Consequently, if the building standards are not both contained in the listed model code and referenced in the California Building Standards Code, they cannot apply or become effective throughout the state.
 

 IAPMO counters that the statute lists only six model codes. As it reads the statute, the Legislature has mandated that the standards in the six listed model codes, which are incorporated by reference in the California Building Standards Code, shall apply in California. Any other interpretation would render the list of model codes in the statute meaningless. In its view, the Legislature has not given the Commission any authority to use other codes in place of these listed codes.
 
 [2]
 

 We find the argument advanced by IAPMO to be implausible. Under its construction, the six listed model codes must be used in California until the Legislature amends the statute, even if private entities publishing those codes ceased publication or otherwise became defunct. Thus, absent legislative action, the state would be saddled with outdated and unusable standards. Such a construction would deprive the Commission of the ability to update the standards on an ongoing basis, an ability which forms the linchpin of the statutory scheme. Further, such a construction is inconsistent with the statutory authority reposed in the Commission to approve or reject buildings standards for the state. (See, e.g., §§ 18928, subd. (c), 18931, 18933, 18934.5, 18934.6, 18934.7.) We therefore reject IAPMO’s contention that section 18938, subdivision (b), freezes the six listed codes as the mandatory models and thus deprives the Commission of the ability to approve or reject them. It seems far more likely, given the statutory scheme, that the Legislature listed the six model codes only because they had historically been used in California. Nothing suggests that the Legislature intended to freeze those codes as the mandatory standards even when, as is the case here, they are no longer published.
 

 Moreover, the interpretation of the State Building Standards Law urged by IAPMO would push the act over the line of unlawful delegation of the lawmaking power. Under that construction IAPMO could, by the simple act of withdrawing from joint publication of a model code, force the Commission and all state agencies interested in the subject matter to adopt an older, outdated model code as the basis for state regulation with the force of law. IAPMO could effectively veto any effort by the Commission and state
 
 *256
 
 agencies charged with regulatory authority to adopt a more recent and updated version of the model code. A private entity such as IAPMO cannot lawfully be granted such power over the regulatory authority of the state.
 

 It is an established principle of statutory construction that “[i]f a statute is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional in whole or in part, or raise serious and doubtful constitutional questions, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable.”
 
 (Miller
 
 v.
 
 Municipal Court
 
 (1943) 22 Cal.2d 818, 828 [142 P.2d 297]; see also
 
 People
 
 v.
 
 Superior Court
 
 (Romero) 13 Cal.4th 497, 509 [53 Cal.Rptr.2d 789, 917 P.2d 628].)
 

 The interpretation of the State Building Standards Law urged by IAPMO would constitute an unlawful delegation of power over the state’s regulatory authority and, as we have noted, would defeat the Legislature’s purposes by compelling the Commission and other state agencies to adopt and utilize an older, outdated version of the Uniform Mechanical Code. Since the language of the statutory scheme does not expressly or by necessary implication compel such an interpretation, we may not embrace it. It follows from our reading of the statutory scheme that the trial court correctly denied IAPMO’s writ petition.
 

 Disposition
 

 The judgment is affirmed.
 

 Puglia, P. J., and Raye, J., concurred.
 

 A petition for a rehearing was denied June 17, 1997, and appellant’s petition for review by the Supreme Court was denied August 13, 1997.
 

 [1]
 

 Plaintiffs are the International Association of Plumbing and Mechanical Officials and the following organizations involved in the building industry, California Legislative Conference of the Plumbing, Heating and Piping Industry, the California Plumbing and Mechanical Contractors Association, the Northern California Mechanical Contractors Association, the Piping Industry Progress and Education Trust Fund, and the Associated Plumbing and Mechanical Contractors of Sacramento, Inc. For clarity and convenience we shall refer to the plaintiffs by reference to the International Association of Plumbing and Mechanical Officials, hereafter IAPMO. The defendant is the California Building Standards Commission, which we will hereafter refer to as the Commission. The real party in interest is the International Conference of Building Officials, which we will hereafter refer to as ICBO.
 

 [2]
 

 As to model codes not listed in the statute, such as model codes governing energy standards and elevator safety, IAPMO concedes that the Commission is free to select any model code.